IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-00358-CBS

ROBERT LYNN STILSON,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

    This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Robert Lynn Stilson's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated September 29, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. No. 25). The court has carefully considered the Complaint (filed February 7, 2014) (Doc. No. 1), Defendant's Answer (filed April 17, 2014) (Doc. No. 12), Plaintiff's Opening Brief (filed June 18, 2014) (Doc. No. 16), Defendant's Response Brief (filed August 22, 2014) (Doc. No. 20), Plaintiff's Reply (filed September 12, 2014) (Doc. No. 21), the entire case file, the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In March 2011, Plaintiff filed an application for disability benefits, alleging a disability onset date of November 30, 2009. (*See* Social Security Administrative Record (hereinafter "AR") at 23, 41, 226). Plaintiff alleged that his ability to work was limited by chronic back pain. *See Id*. at 361. Plaintiff was born on October 21, 1959, and was 50 years old on the date of his alleged disability onset. *Id*. at 31, 174. He completed the 9th grade and has worked in a variety of jobs including as a construction foreman, landscape foreman, machinists helper, and warehouse worker. *Id*. at 47, 222. After his initial application was denied, Plaintiff requested a hearing, which was held on August 15, 2012, before an Administrative Law Judge ("ALJ"). *See Id*. at 37-59, 132-133.

Plaintiff was represented by counsel at the hearing and testified that he suffered from debilitating back pain as well as depression. *Id*. at 41. He stated that after being laid off in 2009, he attempted to return to work in 2010, but his back pain forced him to quit after four days. *Id*. When asked whether he could lift twenty pounds, Plaintiff stated that lifting any amount would exacerbate his pain. *Id*. at 52. He testified that he could barely carry groceries home from the store without suffering from back spasms. *Id*. at 43. He also stated that his back would spasm if he sat straight up or walked for more than an hour at a time. *Id*. at 49-50. However, he also testified that he tried to walk for at least an hour every day, and that he could drive, walk his dog, and cook. *Id*. at 45-46. With regard to his depression, Plaintiff testified that he became depressed when thinking about his family's suffering. *Id*. at 49. According to Plaintiff, counseling did not help alleviate his depression. *Id*. at 51.

A vocational expert ("VE") also testified at the hearing. *Id*. at 53-57. The VE testified that Plaintiff's prior work experience was classified as ranging from "light" to "heavy" by the

Dictionary of Occupational Titles exertional guidelines. *Id*. at 54-55. The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with the same education and past work experience as Plaintiff — had the following limitations: (1) lift no more than 20 pounds at a time, and 10 pounds repetitively; (2) occasionally stooping, squatting, climbing of inclines and stairs; and (3) a simple, unskilled Specific Vocational Preparation ("SVP")[1] of 1 or 2. *Id*. at 55. The VE testified that an individual with those limitations could not perform the work involved in Plaintiff's previous jobs because it would be too heavy or complex. *Id*.

The VE, however, did identify three other "light" exertional jobs, with an SVP: 2, which someone with those limitations could perform and testified about the number of each position in the regional and national economy: (1) housekeeper (3,600 Colorado; 180,000 National); (2) electrical assembler (7,200 Colorado; 172,000 National); and (3) ticket taker (970 Colorado; 120,000 National). *Id*. at 55. The ALJ then asked the VE to assume that the individual was limited to "sit down work." *Id*. at 56. The VE testified that all previous work would be eliminated. *Id*.

Plaintiff's counsel then asked the VE to assume that the individual would be required to lie down for at least an hour — in addition to normal breaks and lunch periods — after performing an activity such as walking or standing. *Id*. at 57. The VE testified that under those circumstances, the individual would not be able to maintain gainful employment. *Id*.

On September 17, 2012, the ALJ issued his decision denying benefits. *Id*. at 20-36. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[2] At step

---

[1] Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work;

3

one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since November 30, 2009. *Id.* at 25. At step two, the ALJ found that Plaintiff's back pain constituted a severe impairment. *Id.* He further concluded that although Plaintiff had been diagnosed with depression, there was insufficient evidence to conclude that Plaintiff's depression imposed more than a minimal limitation on his ability to perform basic mental work-related activities. *Id.* at 26. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id.* at 27.

> The ALJ then assessed the following residual functional capacity ("RFC"):
>
>> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).

*Id.* at 28. The ALJ specified that "light jobs" involve lifting no more than 20 pounds occasionally and 10 pounds frequently, standing and walking 6 out of 8 hours, and sitting 2 out of 8 hours. *Id.* at 28 n.1.

In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's records. The ALJ noted that although Plaintiff's medical records established the existence of a severe physical impairment, there was simply an insufficient amount of evidence to demonstrate that this impairment rendered Plaintiff totally incapable of working. *Id.* at 29. The ALJ also noted that Plaintiff's statements regarding his alleged symptoms and limitations were inconsistent with his daily activities of living. *Id.* In addition, the ALJ observed that the minimal objective medical evidence — as opposed to Plaintiff's subjective statements to his

---

and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

providers — showed only mild findings. *Id*. The ALJ credited the opinion of Dr. Roseanne K. Iverson, a consulting examining physician, who examined Plaintiff and provided opinions regarding Plaintiff's limitations.[3] *Id*. at 35. Dr. Iversen concluded that Plaintiff's medical history and physical examination were incongruous with Plaintiff's observed mobility outside of the exam. *Id*. at 286. Specifically, during his physical exam, Plaintiff had limited range of motion with forward and bilateral flexion. *Id*. However, following the exam, Plaintiff was observed flexing much more at the hip when he got into the back seat of a two-door sedan. *Id*.

The ALJ also afforded significant weight to the opinions of the physicians employed by the Disability Determination Services ("DDS"). With respect to Plaintiff's psychological impairments, Dr. Mark Dilger noted that, during his consultative exam, Plaintiff was oriented to time and place; his recent and remote memory were intact; he had a normal attention span and concentration; and he had normal speech, intelligence, and knowledge. *Id*. at 106-07. Consequently, Dr. Dilger concluded that Plaintiff's condition (depression) was non-severe. *Id*. at 107. The ALJ found that these conclusions were consistent with the evidence of record. *Id*. at 31.

Dr. Anthony LoGalbo reviewed Plaintiff's medical records, evaluated Plaintiff's claims of physical disability, and prepared a physical RFC assessment. Dr. LoGalbo concluded, based on his review of the evidence, that Plaintiff's claims were only partially credible. *Id*. at 107. Because they were consistent with record evidence, the ALJ credited Dr. LoGalbo's conclusions that Plaintiff (1) was capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; (2) should never climb ladders, ropes, or scaffolds; (3) could stoop occasionally; and (4) could kneel and crouch frequently. *Id*. at 31, 108. However, the ALJ concluded that there was

---

[3] The ALJ did not credit Dr. Iversen's conclusions that Plaintiff was "not a candidate for manual labor" and "he is only qualified to do manual labor secondary to his educational status" because such opinions are reserved to the Commissioner. *Id*. at 30. *See* Social Security Ruling 96-5p, 1996 WL 374183, at *1 (SSA July 2, 1996) ("treating source opinions on issues reserved to the Commissioner are *never* entitled to controlling weight or special significance") (emphasis added).

no support for Dr. LoGalbo's restrictions on climbing ramps or stairs and avoiding hazards. *Id*. at 31, 108-09. Based on the foregoing, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms "not credible" to the extent that they were inconsistent with the RFC. *Id*. at 31.

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. *Id*. at 31. At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 32. Specifically, the ALJ found that Plaintiff could work as a housekeeper, an electrical assembler, or a ticket taker. *Id*. Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. at 32-33. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review of the ALJ's decision. *Id*. at 18-19. The Appeals Council denied his request for review on November 19, 2013. *Id*. at 7-11. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on February 7, 2014. (Doc. 1). The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse

an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that this case should be remanded for the consideration of new evidence. He also argues that the ALJ erred in the following ways: (1) the ALJ's credibility determination was not supported by substantial evidence; (2) the ALJ erred in his consideration of the medical evidence; and (3) the conclusion that Plaintiff is capable of performing other jobs in significant numbers is not supported by substantial evidence. The court perceives no reversible error.

**A.     Sentence Six Remand**

Plaintiff argues that the court should remand this case to the Commissioner on the ground that new evidence has come to light that may have changed the outcome of the case. (Doc. 16 at 16-21). Under the sixth sentence of 42 U.S.C. § 405(g), the court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Plaintiff has asserted two "new" pieces of evidence that he believes should compel the court to remand the case to the Commissioner for reevaluation pursuant to Section 405(g): (1) an MRI report, which was completed on November 20, 2012; and (2) a new functional capacity evaluation, which was completed on December 12, 2012. The court concludes that Plaintiff has not satisfied his burden with respect to either piece of evidence.

Plaintiff has not met his burden of showing "good cause for the failure to incorporate" either the MRI report or the new functional capacity evaluation. In order to remand this case under sentence six of Section 405(g), the court is required to make a finding that Plaintiff has shown good cause for his failure to incorporate the evidence into the record before the initial ALJ, or at minimum, the Appeals Council. *Melkonyan v. Sullivan*, 501 U.S. 89 (1991) (refusing to treat the district court's remand as a sentence six remand because no finding of "good cause" had been made).

Plaintiff contends that good cause exists for failing to incorporate these records because both of these assessments were completed after the ALJ issued his opinion in September 2012. (Doc. 16 at 21). This, however, does not explain why the MRI report and the new functional

capacity evaluation were not provided to the Appeals Council.[4] The Council did not issue its opinion denying review until November 19, 2013, nearly one year after Plaintiff came into possession of this "new" evidence. (AR at 7-11). That was more than enough time for Plaintiff or his counsel to ensure that these documents were included in the record. Plaintiff's, or his counsel's, failure to exercise the diligence necessary to ensure that these documents were submitted to the Appeals Council does not meet the good cause requirement of sentence six.

Furthermore, Plaintiff has not demonstrated that the results of the new functional capacity evaluation meet the sentence six standard for remand. In order for new evidence to be considered material for purposes of a sentence six remand, the court "normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before [her]." *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir. 1991). "Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied." *Id.*; *see also Williams v. Barnhart*, 178 F. App'x 785 (10th Cir. 2006) (concluding that a remand was "not appropriate in this case because the new evidence does not demonstrate that the findings relate back to the period on or before the date of the ALJ's decision").

Here, the new functional capacity evaluation was conducted on December 12, 2012. (Doc. 16-2). Although the evaluation refers to Plaintiff's previous injuries, its conclusions are also clearly based on Plaintiff's reports that his symptoms had been "worsening as of late." *Id*. While such information might be material to a new application, it is not probative of his condition at the hearing before the ALJ. *See Sanchez v. Health & Human Servs.*, 812 F.2d 509,

---

[4] Plaintiff contends that his "prior attorney may have transmitted or attempted to transmit the MRI evidence to the Appeals Council and it is unknown why the evidence did not make it into [his] administrative record." (Doc. 16 at 21). This argument is not well taken. A close reading of counsel's letter reveals that he did not submit any new evidence. Rather, counsel asked the Appeals Council to review and reconsider the evidence already submitted to the ALJ. (AR at 260). The Council's denial supports this conclusion. In its decision, the Council indicates that the only new exhibit submitted was the letter from Plaintiff's counsel. *Id*. at 7, 10-11.

512 (9th Cir. 1987) ("The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing.").

Without the necessary demonstration of good cause, or a demonstration that the new functional capacity evaluation relates to the period for which the benefits were previously denied, the court cannot remand the case under sentence six.

**B.     Evaluation of Plaintiff's Credibility**

As to Plaintiff's complaints of frequent pain, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible" to the extent that they were inconsistent with the RFC. (AR at 31). Plaintiff contends that this conclusion was not supported by substantial evidence. This argument must fail.

"'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Subjective complaints of pain alone are insufficient to establish a disability. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal citations omitted). To determine whether pain is disabling, the ALJ is entitled to examine the medical record and evaluate a claimant's credibility. The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). The ALJ's credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). In this case, the ALJ considered the entire record and

concluded that Plaintiff's complaints regarding the severity of his symptoms were not entirely credible. (AR at 31).

Plaintiff contends that the ALJ's reliance upon his daily activities is contrary to the law, and that his ability to perform those activities does not provide substantial evidence supporting his credibility finding. Plaintiff is correct that "minimal" daily activities, *alone*, do not establish that a claimant does not suffer from disabling pain or establish that a person is capable of engaging in gainful employment. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (working in the yard, performing a few household tasks, working on cars, taking occasional trips with brother in camper); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (jogging and intermittent work as a janitor); *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (daily activities).

Even assuming, for the sake of argument, that the ALJ erred in his consideration of Plaintiff's daily activities[5], remand would not be warranted. Plaintiff's daily activities were but one of the many reasons supporting the ALJ's credibility assessment.[6] The ALJ also considered the fact that Plaintiff's subjective complaints of pain were not entirely consistent with the objective medical evidence. For example, although a June 2011 evaluation demonstrated muscle spasms, tenderness, and decreased range of motion in the lumbar spine, there were no gross deformities and Plaintiff's neurological exam was intact. (AR at 308-10). In addition, during a September 2011 exam, Plaintiff's straight leg raising test was negative bilaterally, he was able to

---

[5] Although Plaintiff did state that some activities — such as fishing or moving furniture — exacerbated his back pain, the court also notes that in his function report (AR at 228-31), Plaintiff stated that he took care of his personal hygiene, cooked, cleaned, walked regularly, and performed yard work using a riding lawn mower without noting any exacerbation of his pain. Thus, the court is not entirely convinced that the ALJ erred in referencing these activities in his analysis of Plaintiff's credibility.

[6] Plaintiff contends that the denial of benefits was based "largely" on Plaintiff's description of his daily activities. This is an overstatement. The ALJ's sum evaluation of Plaintiff's activities constituted approximately three sentences out of a four-page detailed analysis of the evidence.

squat and stand on his toes and heels, his gait was normal, and there was no atrophy in the lower extremities. *Id*. at 286. And, overall, the musculoskeletal exam showed no misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, instability, or abnormal strength or tone. *Id*. In addition, the ALJ observed that — despite his presentation of limited hip mobility during his consultative examination — Plaintiff was observed flexing much more at the hip while getting in the back seat of a car. *Id*. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) ("Exaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by [the] Court[.]").  Finally, Plaintiff's medical records indicated that his medications had been relatively effective in controlling his symptoms. *Id*. at 30, 314, 317. *See Limon v. Shalala*, 844 F.Supp. 1481, 1487 (D. Colo. 1995) ("If an impairment can reasonably be treated or controlled it cannot constitute a disability." (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988))).

Plaintiff's citation to record evidence that would support a contrary conclusion is not persuasive. Even if "the evidence may have also supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a difference choice had the matter been before it de novo.'" *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The court, therefore, finds that the ALJ's credibility determination was supported by substantial evidence.

### C. ALJ's Consideration of Medical Evidence

Plaintiff also argues that the ALJ erred in his assessment of the medical evidence. Specifically, Plaintiff assigns fault to the ALJ's consideration of Dr. LoGalbo's opinions

regarding Plaintiff's limitations. Plaintiff also contends the ALJ erred in his consideration of Plaintiff's GAF score.

With respect to Plaintiff's first argument, under the regulation, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (internal quotation marks omitted).

Where, as here, the medical opinion at issue does not constitute a "treating source,"[7] the court, nevertheless, evaluates the opinion by applying the same factors that are generally used to assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6).

Here, Plaintiff seems to contend that the ALJ erred in his evaluation of Dr. LoGalbo's opinion because he accepted some of the doctor's functional limitations while rejecting others. (Doc. 16 at 24). However, in discussing Dr. LoGalbos' opinion — that Plaintiff should avoid

---

[7] A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a relationship that requires both duration and frequency. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."). Dr. LoGalbo provided only a one-time consultative review of Plaintiff's medical records.

hazards or climbing ramps — the ALJ specifically noted that these determinations were inconsistent with the other evidence of record. (*See* AR at 31 (noting that Plaintiff's clinical examination was relatively unremarkable, his radiographic findings mild and his presentation questionable)). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Tellingly, Plaintiff has not pointed to any evidence in the record that would necessitate a different conclusion with regard to these limitations. Ultimately, this court views Plaintiff's arguments to the contrary as little more than a thinly veiled request for this court to reweigh the evidence, which it cannot do. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's findings. *Id*. Thus, the court concludes that the ALJ did not err in his discussion or consideration of Dr. LoGalbo's opinions.[8]

Turning to Plaintiff's second argument, regarding his mental impariments, he contends that the ALJ did not give proper weight to the single Global Assessment Functioning ("GAF") score reflected in Plaintiff's treatment records. (Doc. 16 at 24). "The GAF scale is used by clinicians to report an 'individual's overall level of functioning.'" *Weigel v. Astrue*, 425 F. App'x 706, 708 n.3 (10th Cir. 2011) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)). While low GAF scores can indicate serious functional impairments in social, occupational, or educational settings, *see Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007), nothing in any of the medical records indicates that this one-time GAF score of 45 undermined the ALJ's RFC determination. Nor do the medical records indicate an impairment that would seriously interfere with Plaintiff's

---

[8] To the extent that Plaintiff relies on some other, unspecified, evidence that the ALJ allegedly ignored, (*see* Doc. 16 at 25), this argument is bare and undeveloped. Thus, the court will not consider it. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

Case 1:14-cv-00358-CBS   Document 27   Filed 03/04/16   USDC Colorado   Page 15 of 17

ability to work. "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Here, Peggy Sammons, LPC, did not explain how she calculated Plaintiff's GAF score or how it impacted Plaintiff's functional capabilities. (AR at 305). Therefore, it was reasonable to assign little weight to this GAF score.

Furthermore, there was substantial evidence in the record to support the ALJ's conclusion that Plaintiff's mental impairment was not severe. Indeed, Plaintiff's own medical records demonstrate that his depression was alleviated with medications. (AR at 331-32, 333-34, 336-41). *See Limon*, 844 F.Supp. at 1487.

In addition, as the ALJ discussed, the evidence indicated that Plaintiff's mental impairment did not affect his daily living or social functioning. He both testified and told his providers that he was physically active on a regular basis. (AR at 45-46, 336, 338, 340). He was able to care for his own hygiene as well as other household tasks. *Id*. at 228-29. He also had no apparent issue relating to his wife, and he reported socializing on the phone and internet with his children. *Id*. at 46-47. To the extent that Plaintiff's depression mildly affected his concentration, persistence, or pace, the ALJ specifically accounted for this limitation — in Plaintiff's favor — in the hypotheticals posed to the VE by requiring jobs with an SVP of 1 or 2. *Id*. at 26-27, 55. Thus, a remand is unwarranted.

### D.    Sufficient Jobs in the National Economy that Plaintiff can Perform

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs

15

existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 32-33). Specifically, the ALJ found that Plaintiff could work as a housekeeper, an electrical assembler, or a ticket taker. *Id*. at 32. Plaintiff argues that this finding is not supported by substantial evidence. The court disagrees.

At the hearing, the ALJ heard testimony from the VE. The ALJ posed hypotheticals to the VE that involved all of the physical and mental aspects of the RFC ultimately adopted by the ALJ. (*See* AR at 54-57). The VE testified that someone with those restrictions could work as a housekeeper, an electrical assembler, or a ticket taker. *Id*. at 55.

Plaintiff contends that the hypothetical posed by the ALJ failed to incorporate the appropriate limitations. (Doc. 16 at 26-27). However, as discussed above, this court has concluded that the RFC was based on and supported by substantial evidence. Because the hypothetical question was based on the RFC, and because the RFC was supported by the record, the court concludes that the ALJ did not err in posing its hypothetical.

Therefore, the court concludes that the ALJ's step five finding — that there were significant jobs in the national economy that Plaintiff could perform — is supported by substantial evidence.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Stilson was not disabled within the meaning of Titles II and XVI of the Social Security Act and, therefore, not eligible to receive Disability Insurance Benefits or

Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.

DATED at Denver, Colorado, this 4th day of March, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge